2007 UT 62

**Lynn NICHOLAS, Plaintiff
and Appellant,**

v.

**ATTORNEY GENERAL, State of Utah,
Defendant and Appellee.**

No. 20060297.

Supreme Court of Utah.

Aug. 14, 2007.

Mary J. Woodhead, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, David V. Pena, Asst. Att'ys Gen., Salt Lake City, for defendant.

Benson L. Hathaway, Stephen W. Geary, Salt Lake City, for amicus Utah Public Employees Association.

WILKINS, Associate Chief Justice:

¶ 1 Lynn Nicholas appeals the decision of the district court, which granted the State's motion to dismiss her complaint against her former employer, the Attorney General of the State of Utah. The question presented on appeal is whether Congress validly abrogated state sovereign immunity when it passed the self-care provision of the Family Medical Leave Act ("FMLA") such that the State of Utah can be sued for money damages by an employee for violations of the Act. We conclude that the self-care provision of the FMLA is not a valid abrogation of state immunity. We accordingly affirm the decision of the district court.

## BACKGROUND

¶ 2 Ms. Nicholas was an Assistant Attorney General in the Office of the Utah Attorney General when her daughter-in-law died unexpectedly following childbirth. Ms. Nicholas was subsequently diagnosed with post-traumatic stress disorder and, over the course of several months, worked a reduced schedule and took several leaves of absence to deal with her own illness and to help support her son. These leaves were classified by the Attorney General's Office as family medical leave.[1]

¶ 3 According to Ms. Nicholas, at the end of her leave, the Office of the Attorney General actively discouraged her from coming back to work by placing numerous impediments in the way of her return. Due in part to the conduct of her supervisors, Ms. Nicholas experienced a deterioration of her condition and took disability retirement.[2]

¶ 4 Ms. Nicholas commenced this action by filing a complaint. The complaint alleged that the Attorney General interfered with her rights under the FMLA. The State filed a motion to dismiss, claiming immunity. After briefing and argument, the trial court granted the motion to dismiss. This appeal followed.

## ANALYSIS

¶ 5 This court reviews the trial court's grant of a motion to dismiss for correctness, giving no deference to the determination of the court below.[3]

¶ 6 The FMLA authorizes qualified employees to take leave from their jobs in certain circumstances. The first three of four categories of eligible leave, known as the "family-care provisions," relate to the care of family members, such as the birth and care of a child;[4] adoption of or foster care of a child;[5] and care for a spouse, child, or parent who has a serious health condition.[6] The fourth and final category of the Act, known as the "self-care provision," is not directly related to the care of family members, but rather allows leave due to "a serious health condition that makes the employee unable to perform the functions of the position of [her employment]."[7]

---

1. Because neither the death of a daughter-in-law nor the assistance of a healthy adult child qualifies for family-care leave, Ms. Nicholas could only qualify for leave under the self-care provision of the FMLA.

2. The State disputes the fact that it placed impediments in the way of Ms. Nicholas' return to work. However, because the case is before this court from a trial court's grant of a motion to dismiss, we interpret the facts in the light most favorable to the non-moving party, in this case, Ms. Nicholas.

3. *Foutz v. City of S. Jordan*, 2004 UT 75, ¶ 8, 100 P.3d 1171.

4. 29 U.S.C. § 2612(a)(1)(A).

5. *Id.* § 2612(a)(1)(B).

6. *Id.* § 2612(a)(1)(C).

7. *Id.* § 2612(a)(1)(D).

¶ 7 The FMLA allows individuals to sue their employer for money damages based on violations of the Act. This raises Eleventh Amendment concerns when the employer is a state. The Eleventh Amendment to the United States Constitution [8] recognizes that states have sovereign immunity that "deprives [courts] of jurisdiction to entertain a suit brought by an individual against a nonconsenting State." [9]

■ ¶ 8 Congress may abrogate Eleventh Amendment state immunity if "it (1) makes its intention to abrogate unmistakably clear in the language of the statute, and (2) acts pursuant to a valid exercise of its power under section 5 of the Fourteenth Amendment." [10] The United States Supreme Court has concluded that the clarity of Congress' intent to abrogate state sovereign immunity with regard to the provisions of the FMLA is "not fairly debatable." [11] Therefore, this case turns on whether Congress acted within its constitutional authority, under section 5 of the Fourteenth Amendment, when it sought to abrogate the states' immunity under the self-care provision of the FMLA.

¶ 9 "It remains the province of the courts ... to determine the Fourteenth Amendment's substantive meaning," [12] and whether the FMLA is valid under the Fourteenth Amendment has been seriously questioned by the courts, particularly in connection with the self-care provision of the Act. As the Tenth Circuit Court of Appeals noted, "[A]t least seven other circuits [including ours] have held that either [the self-care provision] alone or the entire FMLA violates sovereign immunity." [13]

¶ 10 In *Nevada Department of Human Resources v. Hibbs*, the United States Supreme Court set out to resolve "the question whether an individual may sue a State for money damages in federal court for violation of § 2612(a)(1)(C)." [14] In a deeply divided decision, the Court held that the family-care provisions of the FMLA were intended by Congress to protect women from gender-based discrimination in the workplace as guaranteed by the Fourteenth Amendment.[15] The Court concluded that Congress had validly abrogated states' immunity under section 2612(a)(1)(C), one of the *family-care* provisions.[16] *Hibbs* did not, however, resolve whether the *self-care* provision of the FMLA is a valid abrogation of states' sovereign immunity.

¶ 11 Since the *Hibbs* decision, several courts have been presented with the question of whether the self-care provision of the FMLA is constitutional. The vast majority of courts have concluded that although the family-care provisions of the FMLA are valid under *Hibbs*, "the self-care provision of the FMLA is unconstitutional insofar as it purports to abrogate state sovereign immunity." [17] For example, the Sixth, Seventh, and Tenth Circuits have all concluded that, in spite of *Hibbs*, the self-care provision is invalid.[18] The Tenth Circuit noted that "at least seven other circuits have held that either subsection (D) alone or the entire FMLA violates sovereign immunity. Some of these decisions have been overruled by *Hibbs* with respect to subsection (C), but the invalidation of the self-care provisions in subsection (D) stands." [19] In fact, it appears that the only case that has held that the self-

8. U.S. Const. amend. XI.

9. *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 395 (6th Cir.2005).

10. *Id.*

11. *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

12. *Touvell*, 422 F.3d at 395.

13. *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159, 1165 n. 3 (10th Cir.2003).

14. 538 U.S. at 725, 123 S.Ct. 1972.

15. *Id.* at 728, 123 S.Ct. 1972.

16. *Id.* at 740, 123 S.Ct. 1972.

17. *Touvell*, 422 F.3d at 400.

18. *Id.; see also Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 879 (7th Cir.2006); *Brockman*, 342 F.3d at 1165 n. 3.

19. *Brockman*, 342 F.3d at 1165 n. 3.

care provision of the FMLA is valid is the Fourth Circuit's unpublished per curiam decision in *Montgomery v. Maryland*.[20] However, in *Touvell*, in concluding that the self-care provision is invalid, the Sixth Circuit noted that the Fourth Circuit's decision in *Montgomery* "gave no explanation for [its conclusion], and we do not consider it persuasive."[21] We agree.

¶ 12 We also agree with those courts that have concluded that the self-care provision of the FMLA is unconstitutional and an invalid attempt to abrogate states' Eleventh Amendment immunity.

¶ 13 *Hibbs* premised its holding that the family-care provisions of the Act validly abrogate state sovereign immunity on the heightened level of scrutiny afforded gender discrimination.[22] *Hibbs* concluded that "the States' record of unconstitutional participation in, and fostering of, gender-based discrimination" justifies "Congress' chosen remedy, the family-care leave provision of the FMLA."[23]

¶ 14 Whether the self-care provision was motivated by a concern about gender discrimination is unclear. On one hand, the Sixth Circuit has stated that "the self-care provision was not motivated by a concern [about] gender discrimination, but rather by a desire to alleviate the economic burdens to employees and their families of illness-related job-loss, and to prevent discrimination against those with serious health problems."[24] Additionally, while gender discrimination is afforded a heightened degree of scrutiny, Congress' stated purposes in passing the self-care provision are afforded no such enhanced review.

¶ 15 The United States Supreme Court has made clear that discrimination against the disabled does not provide a sufficient basis for a congressional abrogation of states' Eleventh Amendment immunity absent a showing of "not just the existence of age- or disability-based state decisions, but a 'widespread pattern' of irrational reliance on such criteria."[25] Congress made no such showing in enacting the self-care provision. In fact, "Congress adduced no evidence of a pattern of discrimination on the part of the states regarding leave for personal medical reasons."[26]

¶ 16 Having failed to establish the required relationship between the self-care provision and prevention of gender discrimination, and also having failed to identify a widespread pattern of state discrimination against the disabled, Congress failed to properly support the enactment of the self-care provision of the FMLA. Accordingly, the provision violates the states' Eleventh Amendment sovereign immunity protection and is invalid.

¶ 17 This case illustrates the type of gender-neutral condition for which self-care leave is often taken. Ms. Nicholas was diagnosed with post-traumatic stress disorder, requiring her to take extensive leave from work. Ms. Nicholas' leave was not required due to her status as a woman.[27] She suffered from an illness, one that does not discriminate based on gender. As noted by the Sixth Circuit Court of Appeals:

> Recent studies ... indicate that men and women are out on medical leave approximately equally. Men workers experience an average of 4.9 days of work loss due to illness or injury per year, while women workers experience 5.1 days per year. The evidence also suggests that the incidence of serious medical conditions that would be covered by medical leave under the bill is virtually the same for men and

**20.** 72 Fed.Appx. 17 (4th Cir.2003).

**21.** *Touvell,* 422 F.3d at 400 n. 2.

**22.** *Nev. Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 736, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003).

**23.** *Id.* at 735, 737, 123 S.Ct. 1972.

**24.** *Touvell,* 422 F.3d at 399.

**25.** *Hibbs,* 538 U.S. at 735, 123 S.Ct. 1972 (quoting *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 90, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)).

**26.** *Touvell,* 422 F.3d at 402.

**27.** It has been noted that pregnancy discrimination may implicate a higher level of constitutional scrutiny than disability discrimination and hence require a different analysis. *Toeller,* 461 F.3d at 879.

women. Employers will find that women and men will take medical leave with equal frequency.[28]

¶ 18 It seems that the great majority of requests for self-care leave occur for the very reason Nicholas presents in this case; that is, personal, short-term medical needs. There is no evidence of record that women are more likely than men to have this kind of medical need. Further, and most importantly, Congress failed to show the necessary link between the self-care provision of the FMLA and state discrimination.

## CONCLUSION

¶ 19 We conclude that the self-care provision of the FMLA is unconstitutional inasmuch as Congress attempts to abrogate state sovereign immunity.[29] Congress' stated purpose in passing the self-care provision of the FMLA was to protect the disabled against discrimination. Because the provision is not clearly directed at remedying past gender discrimination, *Hibbs* does not apply. In addition, Congress failed to establish the requisite history of state discrimination against the disabled necessary to pass prophylactic legislation intended to curb such discrimination. Accordingly, the provision cannot rest on section 5 of the Fourteenth Amendment and is therefore invalid. The State is immune from Nicholas' suit for money damages.

¶ 20 Judge BENCH concurs in Associate Chief Justice WILKINS' opinion.

NEHRING, Justice, concurring in the result:

■ ¶ 21 I join in the result announced by this court in Justice Wilkins' opinion. I write separately because I am convinced that gender discrimination motivated Congress when it enacted the Family Medical Leave Act's self-care provision. *See* 29 U.S.C. § 2612(a)(1)(D) (2000). Two of my colleagues share this view, and on this point I

speak for the court. I disagree with the lead opinion's defense of state sovereign immunity which is tied to a misapprehension that Congress did not enact the self-care provision in response to a concern about gender discrimination. In my view, sovereign immunity insulates the State from Ms. Nicholas' claim brought under the self-care provision of the Act only because Congress failed to complement its gender-based statutory rationale for self care with evidence that states have practiced gender-based discrimination related to self care.

■ ¶ 22 Congress possesses expansive authority through the Fourteenth Amendment to enact legislation that enforces the provision's substantive guarantees. *See* U.S. Const. amend. XIV, § 5. This power includes the ability to subject states to private suits for monetary damages. For our purposes, the exclusive leash on congressional power in this arena is the requirement that a statute provide an appropriate remedy for an identified constitutional violation and not merely "attempt to substantively redefine the States' legal obligations." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 88, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). A reviewing court assessing the merits of a sovereign immunity challenge to the validity of a federal statute must both identify the scope of the constitutional right at issue and determine whether Congress demonstrated a "pattern of constitutional violations on the part of the States in this area." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 729, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003). Finally, a reviewing court must consider whether the statute provides an appropriate remedy. *Id.*

¶ 23 To me, the relevant legislative history and statutory language display unmistakable links between the Act's self-help provision and the right to be free from gender discrimination with regard to unpaid leave, a permissible exercise of Fourteenth Amendment congressional power. *See, e.g.,* 29 U.S.C. § 2601(b)(4) (expressing a desire to "mini-

---

**28.** *Touvell*, 422 F.3d at 402 (quoting H.R.Rep. No. 101–28(I), at 15 (1989)).

**29.** Although we conclude that the self-care provision is not a valid abrogation of state immunity, that immunity "does not, however, bar suits for

money damages against an officer of the state, nor does it bar claims for injunctive relief." *Brockman*, 342 F.3d at 1165 (internal citations omitted).

mize[ ] the potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) ... on a gender-neutral basis"). The Act entitles a qualifying employee to a maximum of twelve weeks of unpaid leave due to a serious health condition, *id.* § 2612(a)(1)(D), and features a complementary cause of action against employers who might interfere with the exercise of that right, *id.* §§ 2615(a)(1), 2617(a)(2). Congress considered the term "serious health condition" to include "ongoing pregnancy, miscarriages, complications or illnesses related to pregnancy, such as severe morning sickness, the need for prenatal care, childbirth and recovery from childbirth." S.Rep. No. 103–3, at 29 (1993), U.S.Code Cong. & Admin.News 1993, at 3, 31. Congress voiced its concern that pregnant women—who are "generally under continuing medical supervision before childbirth" and may require "several days off for severe morning sickness or other complications" or "additional time off during the recovery period from childbirth"—may suffer from employment discrimination. *Id.; cf. id.* at 29, U.S.Code Cong. & Admin.News 1993, at 31 (referencing the Pregnancy Discrimination Act's legislative history and discussing the lengthy medical recovery period associated with even a normal childbirth, "with a longer period where surgery is necessary or other complications develop"). These expressions of congressional intent regarding health conditions unique to women make not fairly debatable that the self-help provisions of the Act were motivated by a concern for gender discrimination.

¶ 24 Were this all that mattered, the Act would likely displace the State's sovereign immunity. But to lawfully abrogate sovereign immunity, Congress must have compiled an adequate record of discrimination by state employers. Congress did not make this case. On this point, the lead opinion and I are in full agreement, and that is enough to preserve sovereign immunity and decide this case.

¶ 25 Justice DURRANT and Justice PARRISH concur in Justice NEHRING's opinion.

¶ 26 Having disqualified herself, Chief Justice DURHAM does not participate herein; Court of Appeals Judge RUSSELL W. BENCH sat.