COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






THE UNIVERSITY OF TEXAS AT
EL PASO,


 Appellant,


v.




ALFREDO HERRERA,



 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 



No. 08-06-00271-CV



Appeal from the


County Court at Law No. 3


of El Paso County, Texas


(TC# 2006-2770) 



O P I N I O N

 This is an interlocutory appeal from the trial court's denial of a plea to the jurisdiction filed
by the University of Texas as El Paso ("UTEP"). At issue is the self-care provision of the Family
and Medical Leave Act. For the reasons that follow, we affirm.

FACTUAL SUMMARY


 Alfredo Herrera was employed by UTEP as a heating, ventilation, and air-conditioning
technician from 2002 to 2006. In March 2005, Herrera suffered an on-the-job injury to his elbow
and was on medical leave until he returned to work on January 4, 2006. Less than a week later,
Herrera re-injured his elbow at work. On January 27, 2007, Herrera's employment was terminated
for failure to cooperate with his supervisor, refusal to follow instructions, failure to adhere to
established rules and regulations, and disorderly and disruptive conduct. Herrera brought an
employment discrimination suit against UTEP complaining he was terminated in retaliation for
taking leave under the self-care leave provision of the Family and Medical Leave Act. (1) UTEP filed
a plea to the jurisdiction alleging Herrera's retaliation claim is barred by sovereign immunity. The
trial court denied the plea to the jurisdiction and UTEP filed notice of appeal.

SOVEREIGN IMMUNITY


 UTEP raises three issues challenging the trial court's denial of its plea to the jurisdiction. 
It argues that the State did not voluntarily waive its sovereign immunity either in the Texas
Constitution or by statute, and the UTEP Handbook of Operating Procedures cannot waive the
State's sovereign immunity. Further, UTEP asserts that Congress did not validly abrogate state
sovereign immunity from suit under the FMLA's self-care provision, and therefore, the trial court
erred by denying the plea to the jurisdiction.

Standard of Review


 When a lawsuit is barred by sovereign immunity, the trial court lacks subject matter
jurisdiction, and dismissal with prejudice is proper. City of Austin v. L.S. Ranch, Ltd., 970 S.W.2d
750, 752 (Tex.App.--Austin 1998, no pet.). A plea to the jurisdiction is a dilatory plea by which a
party contests the trial court's authority to determine the subject matter of the cause of action. City
of Saginaw v. Carter, 996 S.W.2d 1, 2 (Tex.App.--Fort Worth 1999, pet. dism'd w.o.j.); State v.
Benavides, 772 S.W.2d 271, 273 (Tex.App.--Corpus Christi 1989, writ denied). The plaintiff has
the burden to allege facts affirmatively demonstrating that the trial court has subject matter
jurisdiction. Texas Association of Business v. Texas Air Control Board, 852 S.W.2d 440, 446 (Tex.
1993); City of Saginaw, 996 S.W.2d at 2. Subject matter jurisdiction is a legal question which we
review de novo. City of Saginaw, 996 S.W.2d at 2; Texas Department of Health v. Doe, 994 S.W.2d
890, 892 (Tex.App.--Austin 1999, pet. dism'd). We consider the allegations in the petition and
accept them as true. See City of Saginaw, 996 S.W.2d at 2-3. The plaintiff's jurisdictional pleadings
are to be construed liberally in the plaintiff's favor and we look to the pleader's intent. See Texas
Association of Business, 852 S.W.2d at 446. When deciding a plea to the jurisdiction, a court is not
required to look solely to the pleadings, but may consider evidence and must do so when necessary
to resolve the jurisdictional issues raised. Bland Independent School District v. Blue, 34 S.W.3d
547, 555 (Tex. 2000); see County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002).

Family and Medical Leave Act


 The FMLA authorizes qualified employees to take up to 12-weeks of unpaid leave from their
jobs during any 12-month period for one or more of the following reasons:

 (A) Because of the birth of a son or daughter of the employee and in order to care
for such son or daughter.


 (B) Because of the placement of a son or daughter with the employee for
adoption or foster care.


 (C) In order to care for the spouse, or a son, daughter, or parent, of the employee,
if such spouse, son, daughter, or parent has a serious health condition.


 (D) Because of a serious health condition that makes the employee unable to
perform the functions of the position of such employee.


 (E) Because of any qualifying exigency (as the Secretary shall, by regulation,
determine) arising out of the fact that the spouse, or a son, daughter, or parent
of the employee is on active duty (or has been notified of an impending call
or order to active duty) in the Armed Forces in support of a contingency
operation.


29 U.S.C.A. § 2612(a)(1)(West 1999). Subsection (C) is often referred to as the family-care
provision while Subsection (D) is referred to as the self-care provision. The FMLA makes it
unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to
exercise, any right provided under the FMLA. 29 U.S.C.A. § 2615(a)(1). It is unlawful for any
employer to discharge or otherwise discriminate against any individual opposing any practice made
unlawful by the FMLA. 29 U.S.C.A. § 2615(a)(2). It also is unlawful for any employer to discharge
or in any other manner discriminate against any individual because the individual has filed any
charge, or has instituted or caused to be instituted any proceeding, under or related to the FMLA. 
29 U.S.C.A. § 2615(b).

Sovereign Immunity


 The Eleventh Amendment to the U.S. Constitution provides:

 The Judicial power of the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the United States by
Citizens of another State, or by Citizens or Subjects of any Foreign State.


U.S. Const.Amend. XI. The Eleventh Amendment does not create or grant immunity but rather
recognizes that states as separate sovereigns can limit, with few exceptions, their susceptibility to
suit. Hoff v. Nueces County, 153 S.W.3d 45, 48 (Tex. 2004), citing Alden v. Maine, 527 U.S. 706,
728-29, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Federal courts have no jurisdiction over federal
or state law claims against a state or state agency unless Eleventh Amendment immunity has been
expressly waived by the state or abrogated by Congress pursuant to proper constitutional authority. 
Hoff, 153 S.W.3d at 48. Further, Eleventh Amendment immunity protects nonconsenting states from
being sued in their own courts for federal law claims. Id.

Abrogation of Sovereign Immunity by Congress


 Congress may abrogate the States' sovereign immunity if it manifests its intention to abrogate 
in the language of the statute and if it acts pursuant to a valid exercise of its power under Section 5
of the Fourteenth Amendment. Nevada Department of Human Resources v. Hibbs, 538 U.S. 721,
726, 123 S.Ct. 1972, 1976, 155 L.Ed.2d 953 (2003). The FMLA enables employees to seek damages
against any employer, including a public agency, in any federal or state court of competent
jurisdiction. 29 U.S.C.A. § 2617(a)(2). The FMLA defines public agency to include both the
government of a state or political subdivision and any agency of a state or a political subdivision of
a state. 29 U.S.C.A. § 203(x)(West Supp. 2008); 29 U.S.C.A. § 2611(4)(A)(iii). Based on this
language in the statute, the Supreme Court found in Hibbs that Congress made unmistakably clear
its intention to abrogate the States' sovereign immunity. Hibbs, 538 U.S. at 726, 123 S.Ct. at 1977.

 In addressing whether Congress acted within its constitutional authority when it sought to
abrogate the State's immunity for purposes of the FMLA's family-leave provision found in
§ 2612(a)(1)(C), the Supreme Court noted that two provisions of the Fourteenth Amendment are
relevant to the inquiry: Section 5 grants Congress the power to enforce the substantive guarantees
of §1, which includes equal protection of the laws, by enacting appropriate legislation. Hibbs, 538
U.S. at 726-27, 123 S.Ct. at 1977. Congress may, in the exercise of its §5 power, do more than
simply proscribe unconstitutional conduct. Id., 538 U.S. at 727, 123 S.Ct. at 1977. Its §5 power to
enforce the substantive guarantees of §1 of the Fourteenth Amendment includes the authority to both
remedy and deter violation of guaranteed rights by prohibiting a somewhat broader swath of conduct,
including that which is not itself forbidden. Id. In other words, Congress may enact prophylactic
legislation that proscribes facially constitutional conduct, in order to prevent and deter
unconstitutional conduct. Id., 538 U.S. at 727-28, 123 S.Ct. at 1977. Section 5 legislation reaching
beyond the scope of §1's actual guarantees must be an appropriate remedy for identified
constitutional violations, not an attempt to substantively redefine the State's legal obligations. 
Hibbs, 538 U.S. at 728, 123 S.Ct. at 1977. The legislation must exhibit congruence and
proportionality between the injury to be prevented or remedied and the means adopted to that end. 
Id., 538 U.S. at 728, 123 S.Ct. at 1977-78.

 UTEP asserts that in recent years the Supreme Court has used the proportionality and
congruence test to invalidate several congressional attempts to exercise its §5 power. We understand
UTEP to argue that it is extremely difficult for Congress to successfully abrogate state sovereign
immunity. In support of this argument, it cites City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct.
2157, 138 L.Ed.2d 624 (1997), Florida Prepaid Postsecondary Education Expense Board v. College
Savings Bank, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999), Kimel v. Florida Board of
Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), and Board of Trustees of University
of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Unlike the instant
case, none of these cases involved a gender-based classification or other classification subject to a
heightened level of scrutiny. This distinction is significant because it impacts our review.

 The FMLA aims to protect the right to be free from gender-based discrimination in the
workplace. Hibbs, 538 U.S. at 728, 123 S.Ct. at 1978. State gender discrimination triggers a
heightened level of scrutiny. Id., 538 U.S. at 728 and 736, 123 S.Ct. at 1978 and 1982. To survive
such heightened scrutiny, the gender-based classification must serve important governmental
objectives and the discriminatory means employed must be substantially related to the achievement
of those objectives. Id. Because the standard for demonstrating the constitutionality of a gender-based classification is more difficult to meet than the rational basis test, it is easier for Congress to
show a pattern of state constitutional violations. Id., 538 U.S. at 736, 123 S.Ct. at 1982.

 In Hibbs, the Supreme Court examined whether Congress had evidence of a pattern of
constitutional violations on the part of the States with regard to gender-based discrimination in the
workplace. Id., 538 U.S. at 729, 123 S.Ct. at 1978. It found that Congress had before it evidence 
that, despite the passage of Title VII of the Civil Rights Act of 1964 (2), gender discrimination did not
cease and women still faced pervasive discrimination in the job market. Id., 538 U.S. at 729-30, 123
S.Ct. at 1978-79. Further, there was evidence that States continued to rely on invalid gender
stereotypes in the employment context, specifically in the administration of leave benefits. Id., 538
U.S. at 730, 123 S.Ct. at 1979. These stereotypes included beliefs that women's family duties
trumped those of the workplace, caring for family members is women's work, and men do not have
the same domestic responsibilities as women. Id., 538 U.S. at 731 n.5, 123 S.Ct. at 1979 n.5. The
impact of these stereotypes on leave administration by employers forced women to continue to
assume the role of primarily family caregiver and fostered stereotypical views about women's
commitment to work and their value as employees. Id., 538 U.S. at 736, 123 S.Ct. at 1982. This in
turn led to subtle discrimination against women in the workplace. Id. Thus, the Supreme Court
found that the States' record of unconstitutional participation in, and fostering of, gender-based
discrimination in the administration of leave benefits is weighty enough to justify the enactment of
prophylactic §5 legislation. Id., 538 U.S. at 735, 123 S.Ct. at 1981. Since Hibbs was decided, four
federal courts of appeals have found Congress did not validly abrogate immunity for claims based
on the self-care provision. Nelson v. University of Texas at Dallas, 535 F.3d 318, 321 (5th Cir.
2008); Toeller v. Wisconsin Department of Corrections, 461 F.3d 871, 879 (7th Cir. 2006); Touvell
v. Ohio Department of Mental Retardation and Developmental Disabilities, 422 F.3d 392, 405 (6th
Cir. 2005); Brockman v. Wyoming Department of Family Services, 342 F.3d 1159, 1165 (10th Cir.
2003). (3) Relying on the holdings in these cases, UTEP contends that when Congress enacted the
FMLA, it had no evidence before it that employers engaged in a pattern of discrimination in
providing leave for personal medical conditions, and without such findings, the self-care-leave
provision of the FMLA is an invalid abrogation of state sovereign immunity. We disagree with this
argument for two reasons.

 First, we are not persuaded that in order to uphold the self-care provision it is necessary to
have a congressional record replete with evidence showing a pattern of gender-based discrimination
specifically related to leave for personal medical conditions. The Supreme Court has already found
in Hibbs that Congress had evidence before it in 1993 that nearly thirty years after the passage of
Title VII, women still face pervasive discrimination in the job market and the States continued to rely
on invalid gender stereotypes in the administration of leave benefits. Hibbs, 538 U.S. at 729-30, 123
S.Ct. at 1978-79. These invalid gender stereotypes include a belief that a woman's job is secondary
to her role in the home. See id., 538 U.S. at 729, 123 S.Ct. at 1978. The self-care provision is
directed at that stereotype, but it is also directed at a related invalid stereotype: that women of child-bearing age take more leave than other employees. In light of Hibbs, the only question is whether
the self-care provision exhibits congruence and proportionality between the injury to be prevented
or remedied and the means adopted to that end. We conclude that it does.

 Second, even if it can be said that Congress is required to compile a legislative record
showing the existence of past and current gender-based discrimination to justify the enactment of
the self-care provision of the FMLA, we conclude that the legislative history of the FMLA and the
congressional record provides sufficient evidence and relevant congressional findings. We consider
first the historical context in which the FMLA was enacted and its legislative history. Title VII of
the Civil Rights Act of 1964 was intended to remedy discrimination in the workplace based on
gender, among other things. Kazmier v. Widmann, 225 F.3d 519, 546 (5th Cir. 2000)(J. Dennis,
dissenting opinion). In 1976, the Supreme Court held that Title VII did not protect against
discrimination based on pregnancy under the theory that it is not discrimination based on sex, but
rather it is discrimination among women based on a medical condition. General Electric Company
v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). In response, Congress enacted the
Pregnancy Discrimination Act and effectively overruled Gilbert by amending Title VII's definition
of discrimination on the basis of sex to include discrimination on the basis of pregnancy, childbirth,
or related medical conditions. 42 U.S.C.A. § 2000e(k)(West 2003); Kazmier, 225 F.3d at 546, citing
Newport News Shipbuilding and Dry Dock Company v. E.E.O.C., 462 U.S. 669, 676, 103 S.Ct.
2622, 77 L.Ed.2d 89 (1983)(recognizing that the Pregnancy Discrimination Act overturned Gilbert
and rejected the test of discrimination employed in that case). Nevertheless, the Pregnancy
Discrimination Act did not affirmatively grant pregnant workers leave time or the right to return to
their job but only required an employer to provide these benefits if the employer provided them to
other temporarily disabled workers. Kazmier, 225 F.3d at 546.

 In 1985, Congress began considering the issue of family and medical leave. Id. at 547, citing
The Family and Medical Leave Act of 1993: A Survey of the Act's History, Purposes, Provisions
and Social Ramifications, 44 Drake L.Rev. 51 (1995). Representative Pat Schroeder introduced
the Parental and Disability Leave Act of 1985 (PDLA) in the House of Representatives. Kazmier,
225 F.3d at 547. It provided for eighteen weeks of unpaid leave for both mothers and fathers of
newborn or adopted children and twenty-six weeks of unpaid leave for non-work related disabilities. 
Id. The PDLA was not considered by the House but it was resubmitted in 1986 by Representative
William Clay and renamed the Parental and Medical Leave Act of 1986 (PMLA). Two
subcommittees and a full committee (4) conducted hearings to determine the extent of discrimination
in the workplace against men and in favor of women in the workplace with regard to taking leave
to care for sick family members. Id. The PMLA was not considered by the full House. Id.

 In 1989, Representative Clay reintroduced the Family and Medical Leave Act in the House
of Representatives. Kazmier, 225 F.3d at 547. It passed both the House and the Senate, but
President Bush vetoed it in 1990. Id. In 1991, Senator Christopher Dodd introduced the Family and
Medical Leave Act of 1991, which was identical to the bill vetoed by President Bush in 1990. Id. 
Congress amended the bill to change the amount of mandatory leave per year to twelve weeks. Id. 
The Act was passed by both the Senate and the House, but President Bush vetoed it in September
of 1992. Id.

 In 1993, Representative William Ford introduced the Family and Medical Leave Act to the
House. Kazmier, 225 F.3d at 547. The Act's leave provisions were substantially similar to those
of the amended 1991 version of the FMLA. Id. In considering enactment of the 1993 FMLA, the
House of Representatives considered both new evidence of gender-based discrimination with regard
to the administration of leave benefits, but it also reviewed the testimony given at hearings with
respect to the "substantially similar" bills previously considered. Kazmier, 225 F.3d at 547, citing
H.R.Rep. No. 103-8(1). For example, the House Report indicates that the 1993 FMLA had its roots
in the 1985 proposed legislation and it made multiple references to the committee hearings held in
1986 in connection with the 1986 PMLA. Id. at 547-48, citing H.R.Rep. No. 103-8(1). Accordingly,
in determining whether Congress had before it adequate evidence of gender-based discrimination
when it enacted the self-care provision, we will not restrict our review to the 1993 legislative record
but will also consider the evidence before Congress during these earlier hearings.

 Before the adoption of the Pregnancy Discrimination Act of 1978, there was no federally
required parity in the allowance for maternity and sick leave. Laro v. New Hampshire, 259 F.3d 1,
20 (5th Cir. 2001)(J. Lipez, dissenting opinion). The unavailability of maternity leave favored male
employees over those female employees who wanted to bear children. Id. This circumstance
prevented many women from entering the workforce or advancing if they found their way into the
workplace. Id. To rectify this inequity, the Pregnancy Discrimination Act required employers who
provided sick leave for other conditions to offer the same level of benefits for maternity leave. Id.;
42 U.S.C.A. § 2000e(k). But the Pregnancy Discrimination Act did not address the gender-based
stereotype that women of child-bearing age would take more leave than other employees. Id. In fact,
the PDA had an unintended negative impact on women's opportunities in the workplace because
"employers might find it cost-effective to discriminate against married women of child-bearing age,
since these women would end up costing a firm more than they contribute to its worth." Id. at 20,
quoting S.Rep. No. 102-68, at 73 (1991)(testimony of economist Deborah Walker).

 It was in this context that Congress found it necessary to enact the FMLA and include the
self-care provision. Laro, 259 F.3d at 21. Congress found that employment standards which apply
to one gender only have serious potential for encouraging employers to discriminate against
employees and applicants for employment who are of that gender. 29 U.S.C.A. § 2601(a)(6). 
Significantly, Congress did not limit this finding to the family care provision. The stated purposes
of the FMLA are to minimize the potential for employment discrimination on the basis of sex by
ensuring generally that leave is available for eligible medical reasons (including maternity-related
disability) and for compelling family reasons, on a gender-neutral basis and to promote the goal of
equal employment opportunity for women and men. 29 U.S.C.A. §§ 2601(b)(4) & (5). Congress
also had evidence before it that, even where state laws and policies were not facially discriminatory,
they were applied in discriminatory ways. Hibbs, 538 U.S. at 732, 123 S.Ct. at 1980. For example,
Congress heard testimony that the lack of uniform parental and medical leave policies in the work
place has created an environment where sex discrimination is rampant. Id.; The Parental and
Medical Leave Act of 1987, Hearings Before the Subcommittee of the Senate Committee on Labor
and Human Resources, Part 2, 100th Cong. 536 (1987)(comments of Peggy Montes, Mayor's
Commission on Women's Affairs, City of Chicago).

 The self-care provision was not tacked onto the FMLA as some kind of benefit entitlement
completely unrelated to the goal of promoting equal employment opportunity for women and men.
Preceding enactment of the FMLA, the Senate Committee on Labor and Human Resources reported:

 Another significant benefit of the temporary medical leave provided by this
legislation is the form of protection it offers women workers who bear children. 
Because the bill treats all employees who are temporarily unable to work due to
serious health conditions in the same fashion, it does not create the risk of
discrimination against pregnant women posed by legislation which provides job
protection only for pregnancy-related disability. Legislation solely protecting
pregnant women gives employers an economic incentive to discriminate against
women in hiring policies; legislation helping all workers equally does not have this
effect.


S.Rep. No. 102-68, at 35 (1991). The House Committee on Education and Labor made a similar
finding:

 The FMLA addresses the basic leave needs of all employees. It covers not only
women of childbearing age, but all employees, young and old, male and female, who
suffer from a serious health condition, or who have a family member with such a
condition. A law providing special protection to women or any defined group, in
addition to be inequitable, runs the risk of causing discriminatory treatment. [This
legislation], by addressing the needs of all workers, avoids such a risk.


H.R.Rep. No. 103-8, pt. 1, at 29 (1993).

 Thus, Congress intentionally included the self-care provision in the FMLA to counter the
stereotype that women take more advantage of leave policies than men and to provide women with
protection from gender discrimination in the workplace which would have resulted from legislation
providing special protection only for pregnant women. We conclude that Congress had before it
sufficient evidence of gender-based discrimination in the administration of leave benefits to warrant
the enactment of prophylactic §5 legislation. See Hibbs, 538 U.S. at 735, 123 S.Ct. at 1981.

 Further, we conclude that Congress's chosen remedy, the self-care leave provision, is
congruent and proportional to the targeted violation. See Hibbs, 538 U.S. at 735, 123 S.Ct. at 1981.
The failure of Title VII and the Pregnancy Discrimination Act to address the problem justifies
prophylactic measures in response. Id. By creating an across-the-board, routine employment benefit
for all eligible employees, Congress sought to ensure that pregnancy-related sick leave would no
longer be stigmatized as an inordinate drain on the workplace caused by female employees, and that
employers could not evade leave obligations simply by hiring men. Id. By setting a minimum
standard of self-care leave for all eligible employees, irrespective of gender, the FMLA attacks the
formerly state-sanctioned stereotype that women of child-bearing age are absent more than other
employees, thereby reducing employers' incentives to engage in discrimination by basing hiring and
promotion decisions on stereotypes. See Hibbs, 538 U.S. at 737, 123 S.Ct. at 1983. For these
reasons, we conclude that § 2612(a)(1)(D) is congruent and proportional to its remedial object, and
can be understood as responsive to, or designed to prevent, unconstitutional behavior. We therefore
decline to follow the reasoning in Nelson v. University of Texas at Dallas, Toeller v. Wisconsin
Department of Corrections, Touvell v. Ohio Department of Mental Retardation and Developmental
Disabilities, and Brockman v. Wyoming Department of Family Services. Because the trial court did
not err by denying UTEP's plea to the jurisdiction on this ground, we overrule Issue One. Having
found that UTEP's sovereign immunity has been validly abrogated by the enactment of FMLA, it
is unnecessary to address the remaining arguments raised by UTEP. The judgment of the trial court
is affirmed.



November 25, 2008 ANN CRAWFORD MCCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.

Carr, J., Dissenting




DISSENTING OPINION


 I respectfully disagree with the majority's holding.

 In Seminole Tribe v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 67 Empl. Prac. Dec. (CCH)
¶ 43,952 (1996), the Supreme Court articulated a two-part test for determining whether an act of
Congress abrogates the states' Eleventh Amendment immunity. The test asks (1) whether Congress
has unequivocally declared an intent to abrogate a state's immunity and (2) whether Congress has
acted pursuant to a valid exercise of power. (5) 517 U.S. at 55, 116 S. Ct. at 1123.

 Under the second prong of Seminole, in order to provide remedial or preventative protections
under section 5 of the Fourteenth Amendment, Congress must act in order to protect or remedy one
of the stated purposes of the Fourteenth Amendment that is linked to a pattern of constitutional
violations.

 While the line between measures that remedy or prevent unconstitutional
actions and measures that make a substantive change in the governing law is not easy
to discern, and Congress must have wide latitude in determining where it lies, the
distinction exists and must be observed. There must be a congruence and
proportionality between the injury to be prevented or remedied and the means
adopted to that end. Lacking such a connection, legislation may become substantive
in operation and effect. History and our case law support drawing the distinction,
one apparent from the text of the Amendment.


City of Boerne v. Flores, 521 U.S. 507, 519-20, 117 S. Ct. 2157, 2164, 74 Fair Empl. Prac. Cas.
(BNA) 62 (1997) (limiting congressional abrogation to the Fourteenth Amendment). Specifically,
Congress must establish a pattern of constitutional violations, as it relates to its remedial statute,
when utilizing section 5 powers. Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav.
Bank, 527 U.S. 627, 640, 119 S. Ct. 2199, 2207 (1999).

 The majority's view today cannot be reconciled with the specific findings of Congress or the
plain meaning of the self-care leave provision of FMLA. My issue with the majority is two-fold. 
First, the self-care provision of FMLA is distinguishable from the family-care provision in scope and
purpose. (6) Second, prevention of gender discrimination in the workplace is treated by the majority
as the primary purpose of the self-care provisions, a purpose which is not supported by Congress's
findings or the historical record leading to the passage and enactment of FMLA.

 As a preliminary matter, to seek relief under the self-care provision of FMLA, one must have
"a serious health condition that makes the employee unable to perform the functions of the position
of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" which is gender
specific, as defined by the Department of Labor, includes "any period of incapacity due to pregnancy,
or for prenatal care." 29 C.F.R. § 825.114(a)(2)(ii). Simply being pregnant, as opposed to suffering
complications from pregnancy, is not a serious health condition and does not trigger FMLA
protections. Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 952, 9 Wage & Hour Cas. 2d
(BNA) 711 (7th Cir. 2004); Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1383, 10 Wage & Hour
Cas. 2d (BNA) 1770 (11th Cir. 2005). Generally, a "serious health condition" is defined as "an
illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a
hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care
provider." 29 U.S.C. § 2611(11). When looking at the totality of those who are affected by serious
or chronic illness in the United States, pregnancy-related complications make up only a small
fraction of that total.

 There is no evidence or authority to support the majority's contention that the self-care
provision of FMLA was designed to protect women from employment discrimination allegedly
arising from pregnancy-related illnesses -- much less, from employment discrimination practiced
by states, related to pregnancy-related illnesses. The majority also do not cite to any authority
substantiating a stereotype that female state employees of child-bearing age take more leave than
other state employees.

 Congress set forth Findings, which, in its opinion, warranted passage of the Act, at 29 U.S.C.
§ 2601. The Finding which is most relevant to this case states that "due to the nature of the roles of
men and women in our society, the primary responsibility for family caretaking often falls on
women, and such responsibility affects the working lives of women more than it affects the working
lives of men . . . ." Id. at § 2601(a)(5) (emphasis added). Based on this Finding, the U.S. Supreme
Court has understandably approved congressional application of FMLA to the states for family leave
purposes. (7)

 Conversely, the Finding most relevant to the self-care leave provisions makes no distinction
between the sexes. See id. at § 2601(a)(4), which states merely that "there is inadequate job security
for employees who have serious health conditions that prevent them from working for temporary
periods"; this Finding makes no distinction between male and female employees. Without
legislative history connecting any self-care finding to a pattern of sex discrimination, we must give
the self-care provision of FMLA its plain meaning, which is to allow any eligible employee with a
serious medical condition the opportunity to take up to twelve weeks' unpaid medical leave without
fear of losing his or her job.

 The Senate Committee Report in support of the bill which became FMLA likewise
recognizes the distinction between leave for family care and leave for self-care purposes. After
discussing family care issues, the Report continues:

 In addition to the family leave purposes described above, [FMLA] provides
for unpaid job protected leave and the continuation of any existing health insurance
coverage during an employee's serious illness. The fundamental rationale for such
a policy is that it is unfair for an employee to be terminated when he or she is struck
with a serious illness and is not capable of working.


Sen. Rep. No. 103-3, at 11 (1993), reprinted in 1993 U.S.C.C.A.N. 1, 13 (emphases supplied). 
Unlike family care duties, which were found stereotypically to fall far more frequently upon female
employees, the Committee recognized that both males and females suffer serious health conditions
in substantially equal proportions.

 In recognizing the distinction between the stereotype regarding women's role as primary-care
givers and the gender-neutral need to care for one's own serious health conditions, Congress had
before it the following finding:

 Recent studies provided to the [House Education and Labor] Committee
indicate that men and women are out on medical leave approximately equally. Men
workers experience an average of 4.9 days of work loss due to illness or injury per
year, while women workers experience 5.1 days per year. The evidence also suggests
that the incidence of serious medical conditions that would be covered by medical
leave under the bill is virtually the same for men and women. Employers will find
that women and men will take medical leave with equal frequency.


H.R. Rep. No. 101-28(I), at 15 (1989) (quoted by the Sixth Circuit in Touvell v. Ohio Dep't of
Mental Retardation & Developmental Disabilities, 422 F.3d 392, 402, 10 Wage & Hour Cas. 2d
(BNA) 1537 (6th Cir. 2005), cert. denied, 546 U.S. 1173 (2006)).

 In rejecting UTEP's Eleventh Amendment defense, the majority reject a plethora of cases,
almost all of which have found that individuals' efforts to sue a state (or state agency) under the self-care provisions of FMLA are barred and that Congress did not successfully abrogate the states'
Eleventh Amendment immunity.

 To understand the status of the case law in this regard, we need to begin with the Ninth
Circuit's decision in Hibbs v. Department of Human Resources, 273 F.3d 844, 7 Wage & Hour Cas.
2d (BNA) 865 (9th Cir. 2001). In that case, Hibbs sought and obtained FMLA leave from his state
job to care for his ailing wife. When he did not return from this leave pursuant to the Department's
instructions, he was disciplined. He filed suit under, inter alia, FMLA, but the district court granted
the state's motion for summary judgment. The Ninth Circuit reversed and remanded for trial. In
doing so, however, it emphasized that the state's constitutional argument might well have been
stronger under a self-care claim, and it stated: "We do not mean here to state any view with regard
to the personal disability provision of the FMLA." 273 F.3d at 868 n.29.

 The Supreme Court granted certiorari and affirmed, sub nom. Nevada Dep't of Human
Resources v. Hibbs, 538 U.S. 721, 123 S. Ct. 1972, 8 Wage & Hour Cas. 2d (BNA) 1221 (2003). 
In doing so, however, the Court made it clear that it was addressing only leave for family care. See,
e.g., id. at 725, 123 S. Ct. at 1976 ("We hold that employees of the State of Nevada may recover
money damages in the event of the State's failure to comply with the family-care provision of the
Act.") (emphasis supplied); see also id. at 737, 123 S. Ct. at 1982 ("We believe that Congress'
chosen remedy, the family-care leave provision of the FMLA, is 'congruent and proportional to the
targeted violation' [citation omitted].") (emphasis supplied).

 I am hard-pressed to think how the Court might more explicitly have stated its intention to
limit its holding solely to the family-care provision of the Act.

 Since the Supreme Court's decision in Hibbs, numerous courts have followed its holding. 
To date, six federal courts of appeals have explicitly followed the Court's lead in finding that the
states have Eleventh Amendment immunity from employee suits under the self-care portion of the
Act:


 Fifth Circuit: Nelson v. University of Tex. at Dallas, 535 F.3d 318, 13 Wage & Hour Cas.
2d (BNA) 1549 (5th Cir. 2008).



 Prior to Hibbs, the Fifth Circuit had held, in Kazmier v. Widmann, 225 F.3d 519, 526-27, 6 Wage & Hour Cas. 2d (BNA) 481 (5th Cir. 2000), that states had Eleventh Amendment
immunity to suits under both subparagraphs (C) [family-care leave] and (D) [self-care].


 In Nelson, the court held: "[W]e agree with the rationale of the Sixth, Seventh, and
Tenth Circuits that the Supreme Court's ruling in Hibbs applies only to subsection C. 
Therefore, this court's decision in Kazmier still remains the law of this circuit with respect
to subsection D." 535 F.3d at 321.



 Sixth Circuit: Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities,
422 F.3d 392, 10 Wage & Hour Cas. 2d (BNA) 1537 (6th Cir. 2005), cert. denied, 546 U.S.
1173 (2006).



 The court agreed that "Hibbs does not apply to the self-care provision . . . ." 422 F.3d
at 400.


 The Sixth Circuit discussed and expressly rejected the Fourth Circuit's opinion in
Montgomery: (8) "The Fourth Circuit gave no explanation for this statement, . . . and we do not
consider it persuasive." 422 F.3d at 400 n.2.



 Seventh Circuit: Toeller v. Wisconsin Dep't of Corrections, 461 F.3d 871, 11 Wage & Hour
Cas. 2d (BNA) 1380 (7th Cir. 2006).



 In holding that the plaintiff's claim was barred by the Eleventh Amendment, the court
stated: "We note . . . that the Supreme Court was careful throughout Hibbs to state that it
was deciding a case about the family-leave part of the FMLA; one would be hard-pressed to
find anything in that opinion hinting that the ruling extended to all of § 2612(a)." 461 F.3d
at 879.



 Tenth Circuit: Brockman v. Wyoming Dep't of Family Servs., 342 F.3d 1159, 8 Wage &
Hour Cas. 2d (BNA) 1737, 14 Amer. Disabil. Cas. (BNA) 1423 (10th Cir. 2003), cert.
denied, 540 U.S. 1219 (2004).



 The court held that the "self-care provision in subsection (D) is not implicated by"
Hibbs and that the "legislative history [of FMLA] does not . . . identify as the basis for
subsection (D) a link between these two motivations and any pattern of discriminatory
stereotyping on the part of the states as employers." 342 F.3d at 1164.



 Eleventh Circuit: Batchelor v. South Fla. Water Mgmt. Dist., 242 Fed. Appx. 652 (11th Cir.
2007).



 In Garrett v. University of Ala. at Birmingham Bd. of Trs., 193 F.3d 1214, 1219, 5
Wage & Hour Cas. 2d (BNA) 1153, 9 Amer. Disabil. Cas. (BNA) 1635 (11th Cir. 1999),
rev'd in part on other grounds, 531 U.S. 356, 121 S. Ct. 955, 11 Amer. Disabil. Cas. (BNA)
737 (2001), which preceded Hibbs, the Eleventh Circuit had held that the state had Eleventh
Amendment immunity in a self-care case under FMLA.


 In Batchelor, the court held that "Garrett . . . remains the law of this Circuit"
regarding the self-care provision of FMLA. 242 Fed. Appx. at 653.


 In three other circuits, the courts held, prior to Hibbs, that states enjoy Eleventh Amendment
immunity from suits arising under the self-care provisions of FLMA. In these circuits, the courts
have not been called upon to reconsider their holdings in light of Hibbs, but there is no reason to
believe that they would now reach a different conclusion:


 First Circuit: Laro v. New Hampshire, 259 F.3d 1, 7 Wage & Hour Cas. 2d (BNA) 262 (1st
Cir. 2001).



 This case involved solely a claim arising under the self-care provisions of the Act. 
In a thorough analysis of the issue, the First Circuit found a lack of congruence between the
desire to eliminate sex discrimination and the self-care remedy which was sufficient to waive
the state's Eleventh Amendment immunity. 259 F.3d at 16-17.


 In Hibbs v. Department of Human Resources, the Ninth Circuit noted, with
substantial approval, the distinction Laro drew between the constitutionality of applying to
the states the family-care and self-care provisions of the Act. See 273 F.3d at 855.



 Second Circuit: Hale v. Mann, 219 F.3d 61, 6 Wage & Hour Cas. 2d (BNA) 108 (2d Cir.
2000).



 The court held that application of the self-care provisions of FMLA to a state agency
violates the state's Eleventh Amendment immunity. 219 F.3d at 69.



 Third Circuit: Chittister v. Department of Cmty. & Econ. Dev., 226 F.3d 223, 6 Wage &
Hour Cas. 2d (BNA) 545, 25 Empl. Ben. Cas. (BNA) 1025 (3d Cir. 2000) (Alito, J.).



 In another self-care case, then-Judge Alito held that application of the Act to an
employee of a state agency resulted in a lack of congruence and proportionality between the
injury to be remedied and the means adopted to that end. In reviewing Congress's Findings,
Judge Alito noted:


 Notably absent is any finding concerning the existence, much less the
prevalence, in public employment of personal sick leave practices that
amounted to intentional gender discrimination in violation of the Equal
Protection Clause. For example, Congress did not find that public employers
refused to permit as much sick leave as the FMLA mandates with the intent
of disadvantaging employees of one gender.


 226 F.3d at 228-29.


 While the Third Circuit itself has not reconsidered Judge Alito's opinion, four district judges
within its jurisdiction have unanimously agreed that Chittister survives Hibbs:


 Savage v. New Jersey, No. 05-2047, 2007 WL 642916 (D.N.J. Feb. 23, 2007).



 "The explicit and narrow holding in Hibbs, has not overturned the holding in
Chittister that the self-care provision cannot be enforced against the States . . . . 
Chittister remains the law of this circuit . . . ." Id. at *5.



 Wampler v. Pennsylvania Dep't of Labor & Indus., 508 F. Supp. 2d 416 (M.D. Pa.
2007)



 The court cited with approval the foregoing holding in Savage. Id. at 420-21.



 Haybarger v. Lawrence County Adult Probation & Parole, No. 06-862, 2007 WL
789657 (W.D. Pa. March 14, 2007) (Lancaster, J.).



 The court held that Hibbs "was limited to the 'family-care' provision and
does not affect the reasoning of Chittister with regards to the 'self-care' provision of
the FMLA." Id. at *3 n.1.



 Walker v. Department of Military & Veterans Affairs, No. 2:08CV267, 2008 WL
2433091 (W.D. Pa. June 12, 2008) (Cercone, J.).


 

 The court held that "the Hibbs decision was limited to the 'family-care'
provision and . . . the Third Circuit's holding regarding the 'self-care' provision of
the FMLA remained unaffected." Id. at *2.


 Similarly, while the Ninth Circuit has not again faced the issue, one district court within its
jurisdiction has found Eleventh Amendment immunity in a self-care case:


 Wennihan v. AHCCCS, 515 F. Supp. 2d 1040 (D. Ariz. 2005).



 In a self-care case, the court distinguished Hibbs and concluded that its
family-care holding was not applicable. Instead, the court followed the Tenth Circuit
decision in Brockman, and held that the plaintiff's suit against an agency of the State
of Arizona was barred by the Eleventh Amendment. Id. at 1046.


 Finally, although this is apparently a case of first impression in the state courts of Texas, at
least three other states' courts have joined the federal chorus in finding that self-care cases are barred
by the Eleventh Amendment:


 Louisiana: Matthews v. Military Dep't ex rel. La., 970 So. 2d 1089 (La. App. 1 Cir. 2007),
writ denied, 976 So. 2d 177 (La.), cert. denied, ___ U.S. ____, 129 S. Ct. 82 (2008).



 In a self-care case, the Louisiana Court of Appeal also followed Brockman and found
that Congress had not lawfully abrogated the state's Eleventh Amendment immunity. 970
So. 2d at 1090.



 Maryland: Lizzi v. Washington Metro. Area Transit Auth., 384 Md. 199, 862 A.2d 1017,
10 Wage & Hour Cas. 2d (BNA) 1046 (2004), cert. denied, 545 U.S. 1116 (2005).



 In a self-care case, the Court of Appeals of Maryland followed Brockman, holding
that Hibbs "does not have any effect" on the personal-leave provision of FMLA. Id. at 211-12, 862 A.2d at 1024-25 (emphasis in original). In doing so, the state court expressly
rejected the Fourth Circuit's Montgomery decision.



 Utah: Nicholas v. Attorney Gen., 168 P.3d 809, 101 Fair Empl. Prac. Cas. (BNA) 1070, 12
Wage & Hour Cas. 2d (BNA) 1468 (Utah 2007).



 Upholding the state's Eleventh Amendment immunity, the court followed the Sixth
Circuit's opinion in Touvell.


 In summary, the federal courts of appeals for nine circuits (the First, Second, Third, Fifth,
Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits), (9) a federal district court in one of the two
circuits (the Ninth and the District of Columbia) which have not been presented with a controlling
case, and the highest courts of three states (Louisiana, Maryland, and Utah) have concluded that
Congress could not constitutionally abrogate the states' Eleventh Amendment immunity in regard
to the self-care provisions of FMLA.

 Despite the existence of a conflict in the circuits (albeit a 9-1 split), the United States
Supreme Court has been given four opportunities to announce a contrary conclusion, and it has
denied a writ of certiorari all four times. See Touvell, Brockman, Matthews, and Lizzi. 

 I am aware of two cases which have reached a contrary conclusion, neither of which, in my
opinion, is well-reasoned and neither of which actually addresses the issue presented to our Court:


 Fourth Circuit: Montgomery v. Maryland, 72 Fed. Appx. 17 (4th Cir. 2003) (per curiam)
(unpublished).



 Just two months after Hibbs was decided, the Fourth Circuit summarily cited it for
the proposition that "Congress effectively abrogated the states' Eleventh Amendment
immunity against causes of action based on the FMLA." Id. at 19. In so holding, the court
did not notice, let alone discuss, any distinction between the family-care and self-care
provisions of the Act. (10)


 The court's cursory treatment of Hibbs may well be attributable to the fact that
assertion quoted above is pure dictum, since the court then dismissed the lawsuit for failure
to state a claim upon which relief can be granted. Id. at 20.



 Hamilton v. Niagara Frontier Transp. Auth., Nos. 00-CV-300SR, 00-CV-8635R,
2007 WL 2241794 (W.D.N.Y. July 31, 2007) (Schroeder, Mag. J.).



 In Hamilton also, the Magistrate Judge stated summarily that, in Hibbs, the
Supreme Court "held that the FMLA is a valid abrogation of state immunity." Id. at
*13. The district court's opinion did not recognize, let alone discuss, any distinction
between the family-care and self-care provisions.


 The court likewise did not reference, even in passing, the Second Circuit's
contrary decision in Hale.


 Thus, the only two cases which have found a state's Eleventh Amendment immunity to have
been abrogated by the self-care provisions of FMLA did so in opinions which overlooked the
distinction, so carefully and repeatedly noted by the Supreme Court itself (see, e.g., 538 U.S. at 737,
123 S. Ct. at 1982 (11)), between family-care and self-care leaves.

 The majority opinion flies in the face of a mountain of contrary and persuasive legal
authority. I therefore respectfully dissent from its holding that Hibbs abrogated Texas' Eleventh
Amendment immunity from Herrara's FMLA claim arising from a self-care leave.

 The majority deem it unnecessary to consider Herrera's alternative contentions that Texas
has voluntarily waived its sovereign immunity by State law or by provisions in the UTEP handbook. 
In view of the majority's holding, I do not deem it necessary to discuss them in any detail. It will
suffice to say that I believe Herrera's contention that UTEP waived the State's immunity by
provisions in its Handbook to be without merit. See Wells v. Texas A & M Univ. Sys., No. 06-04-00001-CV, 2004 WL 2114438 (Tex. App.--Texarkana Sept. 24, 2004, pet. denied), cert. denied, 546
U.S. 814 (2005).


 KENNETH R. CARR, Justice


November 25, 2008

1. Herrera's suit also includes an allegation that he was terminated for exercising his First Amendment right
to complain about being required to work unsafely and use unsafe equipment. This appeal pertains only to the
FMLA claim.
2. 42 U.S.C.A. § 2000e et seq.
3. In an unpublished opinion, the Fourth Circuit summarily held, based on Hibbs, that Congress validly
abrogated the States' immunity for FMLA claims based on the self-care provision. Montgomery v. Maryland, 72
Fed.Appx. 17, 19 (4th Cir. 2003)(unpublished). Prior to Hibbs, the Fourth Circuit had reached the opposite
conclusion in Lizzi v. Alexander, 255 F.3d 128, 135-36 (4th Cir. 2001).
4. The Subcommittee on Compensation and Employee Benefits and the Committee on Post Office and Civil
Service conducted joint hearings on the PMLA, as did the Subcommittee on Labor Management Standards. 
Kazmier, 225 F.3d at 547.
5. In enacting the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., Congress clearly
satisfied the first prong of the Seminole test: "An action to recover . . . damages . . . may be maintained against any
employer (including a public agency) in any Federal or State court of competent jurisdiction . . . ." 29 U.S.C. §
2617(a)(2) (emphasis supplied).
6. In relevant part, the two provisions read as follows:


 (1) Entitlement to leave


 [A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:


. . .



 (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such
spouse, son, daughter, or parent has a serious health condition.


 (D) Because of a serious health condition that makes the employee unable to perform the
functions of the position of such employee.


29 U.S.C. § 2612(a)(1)(C), (D).
7. See Nevada Dep't of Human Resources v. Hibbs, 538 U.S. 721, 123 S. Ct. 1972, 8 Wage & Hour Cas. 2d
(BNA) 1221 (2003) (hereinafter, "Hibbs"), discussed in greater detail below.
8. Fully cited and more thoroughly analyzed below.
9. I have not sought to discuss the numerous federal district courts cases in which the court has simply
followed and applied the law of that circuit. I have also not discussed at least three district court cases which arose
within the Fifth Circuit after Hibbs, but prior to the Nelson decision. See Bryant v. Mississippi State Univ., 329 F.
Supp. 2d 818, 821-22 n.2, 825 (N.D. Miss. 2004); Solley v. Big Spring State Hosp., No. Civ.A.1:03-CV-094-C,
2004 WL 1553423 (N.D. Tex. July 12, 2004); Jordan v. Texas Dep't of Aging & Disabilities Servs., No.
9:05CV161, 2006 WL 1804619 (E.D. Tex. June 28, 2006).
10. See Bryant, 329 F. Supp. 2d at 821-22 n.2, where the court rejected the holding in Montgomery: "With
no analysis of the issue, the Fourth Circuit reached a conclusion opposite of the one this Court reaches today. . . . In
the absence of more consideration, this Court is unpersuaded by such a general conclusion."
11. "We believe that Congress' chosen remedy, the family-care leave provision of the FMLA, is 'congruent
and proportional to the targeted violation,' . . ." (emphasis supplied).