**Sherry K. WAMPLER, Plaintiff**

v.

**Commonwealth of PENNSYLVANIA, DEPARTMENT OF LABOR & INDUSTRY, WORKERS' COMPENSATION APPEALS BOARD, Defendant.**

**Civil Action No. 1:06–CV–1877.**

United States District Court,
M.D. Pennsylvania.

Sept. 14, 2007.

Keith E. Kendall, Keith Kendall, P.C., Harrisburg, PA, for Plaintiff.

Amy C. Foerster, Pennsylvania Office of Attorney General, Harrisburg, PA, for Defendant.

## MEMORANDUM

KANE, Chief Judge.

Before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted.

## I. BACKGROUND

Beginning in 1996, Plaintiff Sherry Wampler worked for the Pennsylvania Department of Labor & Industry. (Compl. ¶ 3.) Wampler suffers from sleep-related medical issues, IgA deficiency,[1] asthma, and susceptibility to upper respiratory infections. (Compl. ¶ 7.) On March 27, 1998, Wampler submitted a written request for a modified work schedule to

---

1. IgA deficiency affects the function of the immune system, leading to increased risks of respiratory and gastrointestinal infections. National Library of Medicine, MedlinePlus Medical Encyclopedia, (available at http://www.nlm.nih.gov/medlineplus/ency/article/001476.htm).

accommodate sleep-related medical issues. (Compl.¶ 4.) In addition, Wampler took sick leave due to her illnesses. In her complaint, Wampler alleges that Defendant criticized her, discriminated against her, and retaliated against her for taking sick leave. (Compl.¶¶ 8–10.) Additionally, Wampler alleges that her employment was terminated on February 9, 2006, "for allegedly leaving work early and taking extended lunches." (Compl.¶ 10.)

On September 25, 2006, Wampler filed a complaint with the Court alleging that Defendant's actions violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* (Doc. No. 1.) On December 11, 2006, Defendant filed the instant motion to dismiss on the grounds that Plaintiff's claims are barred by state sovereign immunity. (Doc. No. 6.) On December 22, 2006, Defendant filed a brief in support of the motion. (Doc. No. 7.) On January 2, 2007, this Court stayed discovery at the request of the parties pending resolution of the motion. On January 18, 2007, Wampler filed a brief in opposition (Doc. No. 14), to which Defendant replied on February 6, 2007. The motion is now ripe and, as discussed below, will be granted.[2]

## II. DISCUSSION

■ The FMLA provides that an eligible employee may take up to twelve weeks of leave in a twelve-month period for any of the four following reasons:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1). Of the four enumerated reasons for taking leave, the third and fourth relate to medical leave: the third for "family care," and the fourth for "self care." In this case, Wampler asserts rights under the self-care provision, and alleges that Defendant improperly interfered with her rights in violation of the FMLA. 29 U.S.C. § 2615(a).

Defendant argues that Wampler's complaint should be dismissed under the doctrine of state sovereign immunity, which bars suits against states unless the state consents to suit or Congress has validly abrogated such immunity. Wampler argues that Congress abrogated state sovereign immunity from claims under the FMLA and that the suit should therefore be allowed to proceed. As discussed below, the Court holds that Wampler's case is barred.

■ In determining whether Congress validly abrogated state sovereign immunity, a court must answer two questions: "first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 550 (3d Cir.2007). In this case, it is uncontested that Congress unequivocally expressed its intent to

---

**2.** A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

abrogate immunity. *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (holding that 29 U.S.C. § 2617(a)(2) "[t]he clarity of Congress' intent ... is not fairly debatable."); *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 227–28 (3d Cir.2000). However, answering the second question—whether Congress' abrogation is valid—is more difficult in this case.

In enacting the FMLA, Congress acted pursuant to two constitutional clauses: the Commerce Clause of Article I, U.S. Const. Art. I, § 8, and the Enforcement Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 5.[3] *Hibbs*, 538 U.S. at 726–27, 123 S.Ct. 1972. In *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court held that Congress may not abrogate state sovereign immunity pursuant to its authority under the Commerce Clause, *id.*, but may do so pursuant to the Enforcement Clause of the Fourteenth Amendment, *id.* at 59, 116 S.Ct. 1114. Accordingly, unless the FMLA abrogated state sovereign immunity under the Enforcement Clause of the Fourteenth Amendment, Wampler's claims against Defendant are barred. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 80, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

■■■ Under the Enforcement Clause, Congress has the power to enforce substantive rights contained within the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority."). Additionally, Congress has the power to "enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs*, 538 U.S. at 727–28, 123 S.Ct. 1972. However, Congress may not "enforce a constitutional right by changing what the right is." *City of Boerne v. Flores*, 521 U.S. 507, 519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).[4] In determining whether an act of Congress falls within the scope of its enforcement power, a court must apply a three-step inquiry, which requires a party to specify: "(1) with some precision the constitutional right at issue; (2) whether Congress identified a history and pattern of unconstitutional discrimination by the States ...; and (3) whether the rights and remedies created by the statute are congruent and proportional to the constitutional rights it purports to en-

---

**3.** Section 5 of the Fourteenth Amendment provides that: "The Congress shall have power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment.]"

**4.** In *City of Boerne,* the Supreme Court held that Congress exceeded its power under the Fourteenth Amendment in enacting the Religious Freedom Restoration Act of 1993 ("RFRA"), 107 Stat. 1488, which was passed in direct response to the Supreme Court's decision in *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In *Smith,* the Court held that "neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental in-

terest." *Boerne,* 521 U.S. at 514, 117 S.Ct. 2157. RFRA, on the other hand, purported to restore the "compelling interest" test in spite of the Supreme Court's determination. *Id.* at 515, 117 S.Ct. 2157. Congress, in passing RFRA, argued that it was "only protecting by legislation one of the liberties guaranteed by the Fourteenth Amendment's Due Process Clause, the free exercise of religion, beyond what is necessary under *Smith." Id.* at 517, 117 S.Ct. 2157. The Court disagreed, finding that Congress had attempted to make "a substantive change in constitutional protections," which went beyond its powers under the Fourteenth Amendment. *Id.* at 532, 117 S.Ct. 2157.

force and the record of constitutional violations adduced by Congress." *Bowers*, 475 F.3d at 551; *Zied–Campbell v. Richman*, No. 04–26, 2007 WL 1031399, at *5 (M.D.Pa. Mar.30, 2007). If all three steps are satisfied, then Congress' abrogation of state sovereign immunity is valid.

In 2000, the Third Circuit applied the above-described principles to the self-care provision of the FMLA, and concluded that the FMLA did not abrogate state sovereign immunity. *Chittister*, 226 F.3d at 229 (Alito, J.). In reaching its conclusion, the court found that although Congress identified the constitutional right to be free from gender discrimination as a basis for enacting the FMLA, Congress had not made any "finding concerning the existence, much less the prevalence, in public employment of personal sick leave practices that amounted to intentional gender discrimination in violation of the Equal Protection Clause." *Id.* at 228–29. Furthermore, the court found that the "substantive entitlement to sick leave" was "disproportionate to any unconstitutional conduct that conceivably could be targeted by the Act." *Id.* (quoting *Kimel*, 528 U.S. at 83, 120 S.Ct. 631).

Three years later, the Supreme Court in *Hibbs* held that Congress validly abrogated state sovereign immunity with respect to the family-care provision of the FMLA. 538 U.S. at 740, 123 S.Ct. 1972. In contrast to *Chittister*, the Supreme Court determined that the FMLA "aim[ed] to protect the right to be free from gender-based discrimination in the workplace," *id.* at 728, 123 S.Ct. 1972, and that Congress crafted the FMLA to address states' continued reliance on "invalid gender stereotypes in the employment context, specifically in the administration of leave benefits," *id.* at 730, 123 S.Ct. 1972. The Court discussed evidence in the legislative record that demonstrated that "stereotype-based beliefs about the allocation of family duties remained firmly rooted, and employers' reliance on them in establishing discriminatory leave policies remained widespread," *id.*, and that family-leave policies were applied differently to men and women due to "the pervasive sex-role stereotype that caring for family members is women's work," *id.* at 731, 123 S.Ct. 1972. Finally, the Court found that discretion in awarding family leave led to discrimination against women. *Id.* at 732, 123 S.Ct. 1972. Having concluded that Congress identified a pattern and history of gender-based discrimination, the Court proceeded to find that a gender-neutral entitlement to a 12–week unpaid family leave was a "congruent and proportional" remedy to the ills of gender-stereotyping in the workplace. Accordingly, the Court found that Congress abrogated state sovereign immunity with respect to the FMLA's family-care provision.

The question now before the Court is whether the holding in *Hibbs* extends to the self-care provision. This Court is not the first to consider the question of whether Congress abrogated state sovereign immunity with respect to FMLA claims brought under the self-care provision. The Tenth, the Sixth, and the Seventh Circuits have each held that *Hibbs* does not apply to the self-care provision. *Brockman v. Wyoming Dep't of Family Servs.*, 342 F.3d 1159, 1164–65 (10th Cir. 2003); *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 405 (6th Cir.2005); *Toeller v. Wisconsin Dep't of Corrections*, 461 F.3d 871, 878–79 (7th Cir.2006). *See also Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir.2007). Furthermore, at least one court within this circuit has determined that notwithstanding the Supreme Court's holding in *Hibbs*, "*Chittister* remains the law of this circuit" with respect to the self-care provision. *Savage v. New Jersey*, No. 05–2047, 2007 WL

642916, at *5 (D.N.J. Feb.23, 2007). In contrast, the Court is unaware of any Court that has found that Congress validly abrogated state sovereign immunity with respect to the FMLA's self-care provision.

In deciding that *Hibbs* does not extend to the self-care provision, the courts have uniformly found that gender-based stereotypes, which buttressed the family-care provision, are inapplicable with respect to self care.[5] *Brockman*, 342 F.3d at 1164 ("Because the Supreme Court's analysis in *Hibbs* turned on the gender-based aspects of the FMLA's [family-care provision], the self-care provision ... is not implicated by that decision."); *Touvell*, 422 F.3d at 405 ("while *Hibbs* found that Congress had adduced sufficient concrete evidence of discrimination by the states regarding the availability and consequences of family-care leave, there is no equivalent evidence that the self-care provision of the FMLA was intended to, or did, target similar discrimination"); *Toeller*, 461 F.3d at 879 ("We know of no reason why women would be more likely to have this kind of medical problem than men."). This Court agrees.

First, though it occasionally couched its language in terms of leave benefits generally, the Supreme Court's opinion in *Hibbs* explicitly keyed in on the FMLA's concern with the "faultline between work and family—precisely where sex-based overgeneralization has been and remains strongest." 538 U.S. at 738, 123 S.Ct. 1972. Moreover, nothing in *Hibbs* or the legislative history of the FMLA suggests that gender-based stereotypes affected the administration of leave for self-care. Finally, even though *Hibbs* calls into doubt the Third Circuit's opinion in *Chittister*,[6] this does not change the fact that Congress made no finding regarding the "existence ... in public employment of personal sick leave practices that amounted to intentional discrimination." *Chittister*, 226 F.3d at 228. Accordingly, the Court holds that the ruling in *Hibbs* cannot be extended to the FMLA's self-care provision.

■ Wampler argues, alternatively, that the self-care provision of the FMLA guards against a different form of discrimination: disability discrimination.[7] (Pl's Br. in Opp'n 9–10.) In *Touvell*, the Sixth Circuit considered and rejected this argument, finding that "Congress identified no link between the desire to provide a safety net for the seriously ill, and any pattern of discriminatory stereotyping on the part of the states as employers." 422 F.3d at 401–02. Additionally, although Congress may abrogate state sovereign immunity through its power to remedy and deter disability discrimination, *Bowers*, 475 F.3d at 555 ("Title II [of the Americans with Disabilities Act] is a justifiable prophylactic measure to avoid the risk of unconstitutional treatment of disabled students"), the legislative record supporting the self-care provision of the FMLA is virtually silent with respect to a history or pattern of past discrimination with respect to discrimination against the severely ill, *cf. Florida Prepaid Postsecondary Educ. Expense Bd.*

---

5. The Seventh Circuit, however, "express[ed] no opinion about the way in which a request for self-care leave submitted by a pregnant woman, for medical needs associated with her pregnancy, should be assessed for the purpose of state sovereign immunity." *Toeller*, 461 F.3d at 879.

6. In 2006, the Third Circuit expressly left open "the issue of whether Congress has abrogated the state's immunity under the self-care provision of the FMLA." *Febres v. Camden Bd. of Educ.*, 445 F.3d 227, 237 n. 12 (3d Cir.2006).

7. The Supreme Court has recognized that the equal protection clause prohibits irrational disability discrimination. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Tennessee v. Lane*, 541 U.S. 509, 523–22, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004).

*v. College Sav. Bank,* 527 U.S. 627, 643, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) ("Congress, however, barely considered ... whether the States' conduct might have amounted to a constitutional violation under the Fourteenth Amendment"). Thus, without deciding whether Congress could abrogate state sovereign immunity on the basis of irrational disability discrimination under the self-care provision of the FMLA, the Court finds that Congress has not done so.

## III. CONCLUSION

For the foregoing reasons, the Court holds that state sovereign immunity bars Wampler's FMLA claims, and will grant Defendant's motion to dismiss. An appropriate order follows.

### *ORDER*

**AND NOW,** on this 14th day of September, 2007, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss Plaintiff's complaint (Doc. No. 6) is **GRANTED.** Plaintiff's complaint (Doc. No. 1) is **DISMISSED.** The Clerk of Court is directed to close the file.